UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RICKIE BROWN,

               Petitioner,

v.

DEWAYNE BURTON,

               Respondent.

_____/

Case No. 1:17-cv-336

Honorable Robert J. Jonker

## **REPORT AND RECOMMENDATION**

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Rickie Brown is incarcerated with the Michigan Department of Corrections at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Michigan.  On July 25, 2013, a Berrien County Circuit Court jury found Petitioner guilty of two counts of first-degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS § 750.520b, and one count of third-degree criminal sexual conduct (CSC-III), MICH. COMP. LAWS § 750.520d.  On September 30, 2013, the court sentenced Petitioner to concurrent terms of imprisonment of 37 years, 6 months to 60 years on the two CSC-I counts, and 13 years, 4 months to 15 years on the CSC-III count.

       On March 30, 2017, Petitioner filed his habeas corpus petition raising 3 grounds for relief, as follows:

> I.     Mr. Brown is entitled to a writ of habeas corpus where the Michigan Court of Appeals decision is contrary to U.S. Supreme Court precedent when Mr. Brown's Fifth, Sixth, and Fourteenth Amendment rights were violated [when police used a jailhouse informant to record conversations with Mr. Brown after Mr. Brown was represented by counsel and after Mr. Brown had asserted his *Miranda* rights.]

II.     Mr. Brown is entitled to a writ of habeas corpus where the Michigan Court of Appeals decision is an unreasonable application of U.S. Supreme Court precedent when Mr. Brown's Sixth and Fourteenth Amendment rights to confrontation were violated when the prosecutor failed to produce *res gestae* witness[es Tony Powell and Tony Holmes.]

III.    Mr. Brown is entitled to a writ of habeas corpus where the Michigan Court of Appeals decision is an unreasonable application of U.S. Supreme Court precedent when Mr. Brown's Sixth and Fourteenth Amendment rights to have counsel substituted when there was a breakdown in communication.

(Pet., ECF No. 1, PageID.4-6.)

Respondent has filed an answer to the petition (ECF No. 8) stating: ground I should be denied because it is procedurally defaulted and meritless; ground II should be denied because it is non-cognizable and meritless; and ground III should be denied because it is meritless. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless. Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

The thirteen-year-old victim testified that she left her aunt's home in Benton Harbor, Michigan, on December 18, 2012, hoping to avoid the consequences of misbehavior. (Trial Tr. I, ECF No. 9-5, PageID.482-483.) As she tried to make her way to the home of family members on her father's side of the family, she ran into Petitioner. (*Id.*, PageID.486-487.) Petitioner purchased alcohol and food and took her to a home at 1010 Ogden Street in Benton Harbor, Michigan. (*Id.*, PageID.487-488.) The victim became intoxicated on alcohol and high on marijuana. (*Id.*, PageID.488-497.) Petitioner led her to a bedroom. (*Id.*, PageID.497.) Petitioner then repeatedly penetrated her (oral/vaginal, digital/vaginal, penile/vaginal, and penile/oral). (*Id.*,

PageID.498-502.)  The next day, with some assistance from others, the victim was able to: leave the house; make her way to the police station, where she was reunited with her mother; and then make her way to the hospital where she was examined and a nurse prepared a rape kit.  (*Id*., PageID.503-507.)

David Hayhurst, a forensic scientist employed by the Michigan State Police, testified as an expert in serology and DNA analysis.  (Trial Tr. II, ECF No. 9-6, PageID.677-681.) Mr. Hayhurst testified that saliva found on the victim's neck was overwhelmingly likely to have come from Petitioner.  (*Id*., PageID.685-689.)

Maverick Walters, a dorm mate of Petitioner's in the Berrien County Jail, testified regarding statements Petitioner had made, and Walters had recorded, at the Berrien County Jail. (*Id*., PageID.707-720.)  Walters testified that Petitioner "admitted to physically having oral sex, finger sex, and tried to have regular sex with this girl . . . [a]nd she was a baby." (*Id*., PageID.712.) Walters testified that Petitioner said "[s]he gave me good head and she knew what she was doing. . . I tried to put my dick in her but it was too small so [I] fingered her, and licked her." (*Id*., PageID.714-715.)  Walters testified that Petitioner told him he knew that she was 13, but she looked older.  (*Id*., PageID.719-720.)

The jury deliberated for a couple of hours before finding Petitioner guilty of all three charged crimes.  (Trial Tr. III, ECF No. 9-7, PageID.836-841.)  On September 30, 2013, Petitioner was sentenced as described above.  (Sentencing Tr., ECF No. 9-8.)

Petitioner, with the assistance of counsel, directly appealed his convictions to the Michigan Court of Appeals.  Between the brief filed with counsel's assistance and Petitioner's standard 4 brief, Petitioner raised several issues including all of the issues raised in his habeas petition.  By opinion issued April 3, 2015, the court of appeals rejected all of Petitioner's

challenges and affirmed the trial court.  (Mich. Ct. App. Op., ECF No. 9-9, PageID.872-875.) Petitioner then turned to the Michigan Supreme Court, filing a pro per application for leave to appeal raising all of the issues he had raised in the Michigan Court of Appeals.  The supreme court denied leave by order entered March 8, 2016.  (Mich. Ord., ECF No. 9-10, PageID.1024.) Petitioner did not file a petition for certiorari in the United States Supreme Court.  (Pet., ECF No. 1, PageID.2.)

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not

include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    The recorded dialogue between Petitioner and the jailhouse informant

Maverick Walters resided in the same dorm as Petitioner at the Berrien County Jail while they awaited completion of their respective criminal proceedings in the Berrien County Circuit Court.  (Trial Tr. II, ECF No. 9-6, PageID.709-710.)  Petitioner and Mr. Walters conversed regarding Petitioner's case.  (*Id*., PageID.710-712.)  Petitioner essentially admitted to Mr. Walters that Petitioner had committed the crimes with which he was charged.  (*Id*.)

Mr. Walters' proceedings were further along than Petitioner's.   Mr. Walters reported his conversations with Petitioner to Mr. Walters' attorney after he had signed an agreement to plead guilty to the offense with which he was charged.  (*Id*., PageID.711-712.)  Mr. Walters was put in contact with Detective Smigielski of the Benton Harbor Police Department. (*Id*., PageID.712.)  The authorities gave Mr. Walters consideration at sentencing; he would be permitted to serve his sentence at the county jail rather than an MDOC correctional facility, in exchange for Mr. Walters wearing a recording device and recording conversations with Petitioner. (*Id*., PageID.713-714.)  On May 22, 2013, Mr. Walters recorded a conversation with Petitioner during which Petitioner made several admissions regarding the CSC-I and CSC-III charges.  (*Id*., PageID.714-716.)

At trial, Mr. Walters testified regarding his conversations with Petitioner, those that occurred before his arrangement to record conversations and those that Mr. Walters recorded after the arrangement.  A portion of the recording was played for the jury.  (*Id*., PageID.715.)  During deliberations, the jury asked to hear the two-minute excerpt again.  (Trial Tr. III, ECF No. 9-7, PageID.837.)  The trial court granted the jury's request.  (*Id*., PageID.837-839.)

Petitioner contends that introducing as evidence his statements to Mr. Walters recorded at the behest of the police violates Petitioner's Sixth Amendment and Fourteenth

Amendment right to counsel.  Respondent argues that the issue has been procedurally defaulted because Petitioner did not object to the introduction of Mr. Walters' testimony or the recording at trial.

"If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review."  *Magwood v. Patterson*, 561 U.S. 320, 340 (2010).  Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default.  *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

Petitioner argues that admitting Walters' testimony and the recording is equivalent to admitting an uncounseled confession elicited after the Sixth Amendment right to counsel has been invoked.  In *Massiah v. United States*, 377 U.S. 201 (1964), the Court considered the Sixth Amendment implications of admitting a "confession" similar to Petitioner's:

[Massiah] was in 1958 a member of the crew of the S. S. Santa Maria. In April of that year federal customs officials in New York received information that he was going to transport a quantity of narcotics aboard that ship from South America to the United States. . . . [T]he agents searched the Santa Maria upon its arrival in New York and found in the afterpeak of the vessel five packages containing about three and a half pounds of cocaine. . . . He was arrested, promptly arraigned, and subsequently indicted for possession of narcotics aboard a United States vessel.   In July a superseding indictment was returned, charging the petitioner and a man named Colson with the same substantive offense, and in separate counts charging the petitioner, Colson, and others with having conspired to possess narcotics aboard a United States vessel, and to import, conceal, and facilitate the sale of narcotics.  The petitioner, who had retained a lawyer, pleaded not guilty and was released on bail, along with Colson.

A few days later, and quite without the petitioner's knowledge, Colson decided to cooperate with the government agents in their continuing investigation of the narcotics activities in which the petitioner, Colson, and others had allegedly been engaged.  Colson permitted an agent named Murphy to install a Schmidt radio transmitter under the front seat of Colson's automobile, by means of which Murphy, equipped with an appropriate receiving device, could overhear from some distance away conversations carried on in Colson's car.

On the evening of November 19, 1959, Colson and the petitioner held a lengthy conversation while sitting in Colson's automobile, parked on a New York street.  By prearrangement with Colson, and totally unbeknown to the petitioner, the agent Murphy sat in a car parked out of sight down the street and listened over the radio to the entire conversation.  The petitioner made several incriminating statements during the course of this conversation.  At the petitioner's trial these incriminating statements were brought before the jury through Murphy's testimony, despite the insistent objection of defense counsel.

*Massiah*, 377 U.S. at 202-203 (footnotes omitted).  Massiah argued that it was a violation of the

Fifth and Sixth Amendments to use evidence "of incriminating statements which government

agents had deliberately elicited from him after he had been indicted and in the absence of his

retained counsel." *Id*. at 204.  The Court agreed that statements obtained under the described

circumstances "could not constitutionally be used by the prosecution as evidence." *Id*. at 207.

*Massiah* spawned a series of cases explaining the circumstances that render similar

statements a violation of the Sixth Amendment.  The cases involving jailhouse informants are

directly applicable here.  *See Miller v. California*, 392 U.S. 616 (1968) (dissent from denial of

8

certiorari); *Procunier v. Atchley*, 400 U.S. 446 (1971); *Milton v. Wainwright*, 407 U.S. 371 (1972);

*United States v. Henry*, 447 U.S. 264 (1980); *Kuhlmann v. Wilson*, 477 U.S. 436 (1986); *Kansas*

*v. Ventris*, 556 U.S. 586 (2009); *see also Maine v. Moulton*, 474 U.S. 159 (1985) (where the

informant, the petitioner's co-defendant, was outside of the jailhouse when he elicited the

incriminating statements).

    The clearly established federal law from these cases can be summarized in the

following statements:

1. It violates the Sixth Amendment to "use[] against [a criminal defendant] at trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." *Massiah*, 377 U.S. at 206.

2. The "rule . . . must apply to indirect and surreptitious interrogations . . . ." *Id*.

3. The rule applies when an inmate informant deliberately elicits incriminating statements and that conduct is attributable to the government. *Henry*, 447 U.S. at 270-272.

4. The rule does not apply when an inmate informant only listens to the criminal defendant's spontaneous and unsolicited statements. *Kuhlmann*, 477 U.S. at 460.

5. Even if testimony is admitted that should have been excluded under *Massiah*, habeas relief is inappropriate if the error was harmless. *Milton*, 407 U.S. at 373; *Arizona v. Fulminante*, 499 U.S. 279, 311 (1991).

Opinions applying this clearly established federal law reveal that determining whether an inmate

informant deliberately elicits incriminating statements in a way that is attributable to the

government, or simply serves as a listener, is a fact intensive inquiry. *Compare Post v. Bradshaw*,

621 F.3d 406 (6th Cir. 2010) (court determined that Petitioner failed to carry his burden that the

inmate informant was anything more than a listener), and *Ayers v. Hudson*, 623 F.3d 301

(6th Cir. 2010) (court determined that inmate informant was more than a listener based on

surrounding facts); *see also Muehleman v. Florida*, 484 U.S. 882 (1987) (J. Marshall, in dissent from denial of certiorari, disagreed with majority's implicit conclusion that inmate informant was just a listener); *United States v. Cashin*, Nos. 91-2303, 91-2329, 1993 WL 106847 (6th Cir. Apr. 9, 1993) (just a listener); *United States v. Moore*, 917 F.2d 215 (6th Cir. 1990) (same); *United States v. Mohammed*, 501 F. App'x 431, 445-446 (6th Cir. 2012) (inmate informant did not deliberately elicit incriminating statements); *United States v. Stewart*, Nos. 91-5174, 91-5177, 1991 WL 276255 (6th Cir. Dec. 20, 1991) (same); *United States v. Moore*, 240 F. App'x 699 (6th Cir. 2007) (same).

Here, the Michigan Court of Appeals leapt over the factual inquiry necessary to determine whether Mr. Walters deliberately elicited incriminating statements or simply listened. The court of appeals concluded even if Mr. Walters deliberately elicited incriminating statements when he recorded his conversation with Petitioner, the admission of Petitioner's statements was, essentially, harmless:

> Defendant argues that a recorded conversation between himself and a fellow inmate was obtained in violation of his Fifth and Sixth Amendment rights to counsel.  Because this issue was not preserved in the trial court, we review for plain error affecting defendant's substantial rights.  *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).
>
> Even if we were to conclude that defendant's Fifth or Sixth Amendment rights had been violated, there was overwhelming evidence of defendant's guilt, including the victim's testimony, the results of the sexual-assault examination, and DNA evidence.  Therefore, defendant fails to establish that his substantial rights were affected and that an "actually innocent defendant" was convicted.  *Carines*, 460 Mich at 763.  That is, there is no plain error presented.

(Mich. Ct. App. Op., ECF No. 9-9, PageID.872.)

In *United States v. Olano*, 507 U.S. 725, 734-735 (1993), the Supreme Court explained that determining the presence of "plain error" or "harmless error" involves the same analysis: does the error affect substantial rights.   When the Supreme Court held that habeas

10

petitioners are not entitled to relief based on "harmless error," it noted that the existing body of federal case law would apply to the standard. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Thus, the habeas "harmless error" analysis is the same as the *Olano* analysis. *Manning v. Huffman*, 269 F.3d 720, 726 n.3 (6th Cir. 2001).  The plain error test applied by the state court is also the same as the *Olano* analysis.  *See People v. Carines*, 597 N.W.2d 130 (Mich. 1999); *People v. Grant*, 520 N.W.2d 123 (Mich. 1994).  Thus, the absence of prejudice that prompts the state appellate court's conclusion with respect to plain error suggests the alleged error did not have a "substantial and injurious effect or influence in determining the jury's verdict[,]" *Brecht*, 507 U.S. at 623, and, therefore, was harmless.

The state appellate court concluded that the undisputed testimony of the victim, the confirming testimony of the examining nurse, and the DNA evidence provided overwhelming evidence of Petitioner's guilt.  The state appellate court's determination with regard to prejudice resulting from the introduction of Petitioner's incriminating statements through Mr. Walters' testimony and the recording is neither contrary to, nor an unreasonable application of, clearly established federal law.  Moreover, the factual determinations upon which the state appellate court relied are well-grounded in the record.

The state court could have taken the analysis one step further.  Mr. Walters' testimony regarding Petitioner's unrecorded statements, statements that occurred prior to Walters' arrangement with the police and the prosecutor, would be admissible even if the recorded statements were not.  *See Ayers*, 623 F.3d at 309 ("Ayers argues that 'two specific statements elicited by Mr. Hutchinson **after** he met with the Cleveland Police on Saturday, November 25, 2000' should have been suppressed . . . .") (emphasis in original); *Moore*, 917 F 2d at 224 ("Moore's incriminating statements regarding the money orders had already been reported to the

11

police by [the informant]" before the police taped subsequent telephone conversations); *Mohammed*, 501 F. App'x at 446 ("Mohammed voluntarily discussed his circumstances with Elias, and only afterwards did Elias use this information as bargaining power . . . ."). Thus, even if *Massiah* precluded admission of the recording, the jury would have still heard Mr. Walters' testimony that Petitioner "admitted to physically having oral sex, finger sex, and tried to have regular sex with this girl. And she was a baby." (Trial Tr. II, ECF No. 9-6, PageID.712.)

## IV. The two Tonys

Prior to trial, Petitioner indicated that he might call several witnesses, including Tony Powell and Tony Holmes. (Trial Tr. I, ECF No. 9-5, PageID.287.) Tony Holmes apparently owned the home at 1010 Ogden in Benton Harbor, Michigan, where the crimes occurred. (Trial Tr. II, ECF No. 9-6, PageID.627-628, 636.) He was with the victim and Petitioner at the home on December 18 and 19, 2012. (Trial Tr. I, ECF No. 9-5, PageID.490-491, 511, 514, 518-519, 521.) During an investigative interview, Petitioner told police he had seen the victim in the company of Tony Powell during the relevant time period. (Trial Tr. II, ECF No. 9-6, PageID.634-635.)

Petitioner's counsel sought assistance from the prosecutor to obtain service of subpoenas on the two Tonys. On the second day of trial, anticipating the completion of the prosecution's case and the need to schedule defense witnesses, the trial court inquired of the prosecutor and police regarding the efforts that had been made to serve Powell and Holmes (and other witnesses). The trial court concluded that the prosecutor and police had exercised due diligence in attempting to effect service, at least to that point, but directed them to continue their efforts. (Trial Tr. II, ECF No. 9-6, PageID.666.)

The next and last trial day, although the police redoubled their efforts, they did not succeed in effecting service on either of the two Tonys. When it became apparent that the Tonys

12

had not been, and would not be, served with subpoenas for trial, Petitioner's counsel informed the trial court that he was unsure what testimony Tony Holmes might offer, but that Tony Holmes was an important witness because he could testify to who was at the home at 1010 Ogden the night the sexual assaults were alleged to have occurred.  (Trial Tr. III, ECF No. 9-7, PageID.769-770.) Petitioner's counsel reported that Tony Powell had informed members of Petitioner's family that the victim left the house at 1010 Ogden with Demetrius Gaines on the night the sexual assaults were alleged to have occurred.  (*Id*.)

Petitioner's counsel asked for the standard jury instruction regarding the prosecution's failure to produce witnesses.  Michigan Criminal Jury Instruction 5.12 reads: "[*State name of witness*] is a missing witness whose appearance was the responsibility of the prosecution. You may infer that this witness's testimony would have been unfavorable to the prosecution's case."  MICH. CRIM. J. I. 5.12.  The trial court again found that based on the testimony of the police officers and the representations of the prosecutor, reasonable efforts had been made to serve the witnesses.  (*Id*., PageID.779.)  The trial court, therefore, decided that giving the "failure to produce a witness" instruction was not appropriate.  (*Id*.)

Petitioner contends that the prosecution did not do enough to effect service on the two Tonys.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson,*

562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Petitioner's complaint regarding the prosecutor's lack of due diligence is premised entirely on a state statute: MICH. COMP. LAWS § 767.40a(5) ("The prosecuting attorney or investigative law enforcement agency shall provide to the defendant, or defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process upon a witness."). Petitioner's challenge is not cognizable on habeas review. *See Collier v. Lafler*, 419 F. App'x 555, 560 (6th Cir. 2011) ("[W]hether the prosecutor exercised 'due diligence' [in locating a res gestae witness] is outside the scope of our AEDPA review."); *see also Atkins v. Foltz*, No. 87-1341, 1988 WL 87710, *2 (6th Cir. Aug. 24, 1988) ("[F]ederal law does not require the production of all res gestae witnesses. In fact, under federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner."); *Buchanan v. Palmer*, No. 1:11-cv-1359, 2014 WL 7382950 (W.D. Mich. Dec. 29, 2014) (holding that violation of Mich. Comp. Laws § 767.40a, regarding identification of res gestae witnesses and the provision of reasonable assistance in locating and serving process upon them, is a state law claim not cognizable on habeas review); *Holman v. Burt*, No. 2:17-cv-11647, 2018 WL 627111, *4 (E.D. Mich. Jan. 29, 2018) ("The requirement under Michigan law that prosecutors produce *res gestae* witnesses is simply a matter of state law whose enforcement is beyond the scope of federal habeas review.")

Moreover, the trial court and the Michigan Court of Appeals determined that the prosecution had complied with its obligations under state law. (Trial Tr. III, ECF No. 9-7, PageID.769; Mich. Ct. App. Op., ECF No. 9-9, PageID.872-873.) The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84

(1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

         In an attempt to convert this issue into a claim cognizable on habeas review, Petitioner argues that the prosecution's failure to effect service on Powell and Holmes violated his rights under the Confrontation Clause.  (Pet., ECF No. 1, PageID.5; Pet'r's Br., ECF No. 2, PageID.27-28.)  The Confrontation Clause is not implicated because the Tonys never "testified" at trial, either directly or through the introduction of testimonial out-of-court statements, *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004).  The clause applies only to witnesses—those who provide testimony.  A criminal defendant has no right to confront a person who provides no evidence at trial.  *See Cooper v. California*, 386 U.S. 58, 62 n.2 (1967) ("Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront the witnesses against him, because the State did not produce the informant to testify against him.  This contention we consider absolutely devoid of merit."); *see also McCray v. Illinois*, 386 U.S. 300, 313-314 (1967) (same); *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992) ("The Sixth Amendment guarantees to a defendant the right to confront witnesses against him . . . [it] does not, however, require the government to call every witness competent to testify . . . ."); *United States v. Porter*, 764 F.2d 1, 9 (1st Cir. 1985) ("The confrontation clause does not come into play where a potential witness neither testifies nor provides evidence at trial."); *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985) ("[T]he Confrontation Clause is not a guarantee that the prosecution will call all the witnesses it has against the defendant.").

Although Petitioner invokes the Confrontation Clause of the Sixth Amendment, his claim more closely tracks the Compulsory Process Clause of the Sixth Amendment.  Clearly established federal law holds that the Compulsory Process Clause, "at a minimum, [gives] criminal defendants . . . the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 55 (1987) (footnote omitted).  The mere absence of a witness, however, is not enough to establish a violation of the clause.  The witness must be "in [the defendant's] favor."  U.S. Const. amend. VI.  Thus, the Petitioner must show "how [the witness's] testimony would have been both material and favorable to his defense."  *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).  "[T]he defendant's unsupported word alone is not sufficient to demonstrate materiality and favorability where the defendant maintains only that the potential witness 'could explain' or 'might have testified' in some favorable fashion."  *United States v. Damra*, 621 F.3d 474, 490 (6th Cir. 2010) (citing *United States v. Iribe-Perez*, 129 F.3d 1167 (10th Cir. 1997)).

Here, Petitioner offers nothing more than his unsupported word to support the materiality and favorability of the anticipated testimony from Powell and Holmes.  That is not sufficient.

Moreover, "[t]he compulsory process right is circumscribed . . . by the ability of the district court to obtain the presence of a witness through service of process."  *United States v. Moussaoui*, 382 F.3d 453, 463 (4th Cir. 2004).  The Compulsory Process Clause does not guarantee the appearance of any witness; it only requires that the government 'exercise due diligence in a good faith effort to secure the attendance of subpoenaed witnesses.'"  *United States v. Barker*, 553 F.2d 1013, 1022 (6th Cir. 1977).  The state appellate court's determination that the

prosecutor (and police) exercised appropriate diligence in securing the attendance of the witnesses is well-grounded in the record.  The court was simply unable to obtain the presence of the witnesses through service of process because, despite the diligence of the prosecution, it could not locate the witnesses for service.    Accordingly, Petitioner has failed to demonstrate a violation of the Compulsory Process Clause.

## V.    Breakdown in communication between Petitioner and his counsel

The Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defense."  U.S. Const., amend. VI.  One element of that right is the right to have counsel of one's choice.  *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006).  However, the right to counsel of choice is not without limits.  *Id.* at 148; *United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir. 2007).  "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  *Gonzalez-Lopez*, 548 U.S. at 151 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988), and *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)).

"'An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.'"  *Mooneyham*, 473 F.3d at 291 (quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)); *see also Caplin & Drysdale*, 491 U.S. at 624 ("[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts.").   "Good cause" for a substitution exists where there is "a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict."  *Stadler v. Berghuis*, 483 F. App'x 173, 178 (6th Cir. 2012) (quoting *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985)); *see also*

*Lakin v. Stine*, No. 99-1529, 2000 WL 1256900, *5 n.2 (6th Cir. Jul. 13, 2000); *Morton v. Foltz*,

No. 84-1813, 1985 WL 14072, *1 (6th Cir. Dec. 11, 1985).

   As the time for trial approached, the respective defense strategies of Petitioner and

his counsel came into conflict.  Petitioner describes this as a breakdown in communication.  It is

more accurately described as counsel's refusal to pursue a strategy that he considered to be

detrimental to Petitioner.  Petitioner had identified many witnesses he wanted to call to establish

his good character.  (Pet'r's May 10, 2013 Corr., ECF No. 2-3, PageID.46-47; Mot. Hr'g Tr., ECF

No. 9-4, PageID256.)  Counsel warned him that such testimony would open the door to admission

into evidence of Petitioner's prior criminal convictions.  (*Id*.)  The matter came to a head at a

pretrial status conference on May 24, 2013, where the trial court indicated it would not issue

subpoenas for the many character witnesses Petitioner had identified.  (*See* Mot. Hr'g Tr., ECF

No. 9-4, PageID.256 ; Berrien Cnty. Case Event Report, ECF No. 9-1, PageID.141.)  Nonetheless,

Petitioner continued to insist that he wanted counsel to call the witnesses.  (Mot. Hr'g Tr., ECF

No. 9-4, PageID256.)  Counsel, with Petitioner's blessing, moved to withdraw and for the court to

appoint substitute counsel.

   Petitioner, at the hearing, acknowledged that he had no problem continuing with

his counsel if counsel would simply follow Petitioner's strategy of calling the character witnesses.

(*Id*., PageID.259.)  The trial court refused to give Petitioner substitute counsel because it concluded

there was not a bona fide dispute between Petitioner and his existing counsel.  (*Id*., PageID.261.)

The Michigan Court of Appeals concurred:

  In this case, there did not appear to be a bona fide dispute between defense
counsel and defendant.  *People v Echavarria*, 233 Mich App 356, 369; 592 NW2d
737 (1999).  Defendant wanted defense counsel to produce character witnesses at
trial, which defense counsel indicated he would not do.  Defense counsel explained
to defendant that calling character witnesses could damage his defense, but
defendant was persistent in wanting his character witnesses to testify.  "Counsel's

18

decisions about defense strategy, including what evidence to present and what arguments to make, are matters of trial strategy, and disagreements with regard to trial strategy or professional judgment do not warrant appointment of substitute counsel." *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011). Therefore, the trial court did not abuse its discretion in denying counsel's motion to withdraw.

(Mich. Ct. App. Op., ECF No. 9-9, PageID.875.)

It is noteworthy that a substitution of counsel would have been unlikely to achieve the result Petitioner was after: counsel that would support Petitioner's desire to call a bevy of character witnesses. The dangers of that approach are well-recognized in the Michigan courts. The Michigan Supreme Court described those dangers in *People v. Whitfield*, 388 N.W. 2d 206 (Mich. 1986) as follows:

Both the value and the wisdom of presenting character evidence have been doubted. It is thought that such evidence typically adds little of relevance to the determination of the actual issues in a case and is likely to inject extraneous elements. Thus, the prosecution in a criminal trial is generally barred from the circumstantial use of bad character to prove that the defendant committed the crime charged. One of the exceptions to the general rule barring the use of character to prove conformance therewith on a particular occasion is the so-called "mercy rule" found in MRE 404(a)(1), which allows a criminal defendant an absolute right to introduce evidence of his character to prove that he could not have committed the crime. MRE 404(a)(1) allows the introduction of "[e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same." The latter part of MRE 404(a)(1) is the source of the doubt about the wisdom of presenting character evidence as part of an accused's defense: Once a defendant introduces character testimony, the prosecution can then rebut that testimony. Under MRE 405(a), the accused can only present favorable character evidence in the form of reputation testimony. However, MRE 405(a) permits the prosecution's rebuttal to be done either by cross-examining defense character witnesses concerning reports of specific instances of conduct, or by presenting witnesses who testify to the bad reputation of the defendant. *People v. Champion*, 411 Mich. 468, 307 N.W.2d 681 (1981). A witness questioned concerning the defendant's character for truth and veracity may well slip into a general discourse on the defendant's character, as Mr. Barnes did in the instant case, thus opening up the range of rebuttal allowed to the prosecution under MRE 404(a)(1). A character witness for the defense may thus unwittingly furnish the foundation for the prosecutor to acquaint the jury with matters which otherwise could not be admitted into evidence.

*Whitfield*, 388 N.W.2d at 211-212 (footnotes omitted).  The impact of evidence regarding an accused's prior criminal history is recognized to be disproportionately significant to jurors.  In *People v. Allen*, 420 N.W. 2d 499, 507-510 (Mich. 1988), the Michigan Supreme Court reviewed a number of studies that reached that conclusion.  The supreme court quoted one researcher's conclusion that "'jurors almost universally used defendant's [criminal] record to conclude that he was a bad man and hence was more likely than not guilty of the crime for which he was then standing trial.'"  *Id*. at 508.

Based on this record, and the nature of the dispute that prompted Petitioner's disagreement with his counsel, the trial court's refusal to substitute counsel, and the appellate court's affirmance of that decision, is unassailable.  Expressed in terms of the AEDPA standard, the state appellate court's determination that there was no good cause to provide Petitioner substitute counsel is neither contrary to, nor an unreasonable application of, clearly established federal law.  Moreover, the court of appeals' factual determinations regarding the respective positions of counsel and Petitioner are well-supported in the record.  (See Mot. Hr'g Tr., ECF No. 9-4; Trial Tr. II, ECF No. 9-6, PageID.547-559; Trial Tr. III, ECF No. 9-7, PageID.763-764, 771-772, 779.)

## VI.    Other ineffective assistance claims

Petitioner also references specific instances of ineffective assistance by his trial counsel, beyond those that form the basis for habeas ground III.  He references five instances of ineffective assistance in an exhibit to his initial brief in support of the petition.  (Pet'r's Br., ECF No. 13, PageID.53.)  The brief, however, never refers to the exhibit.  The exhibit appears to be a copy of material submitted to the Michigan appellate courts.  He attaches the same information, this time in typewritten, instead of handwritten, form to his objections to Respondent's response

brief.  (Pet'r's Objections, ECF No. 13, PageID.1169-1170.)  As was the case with his initial brief, Petitioner does not identify the attachment or reference it in his objections.

The form petition completed by Petitioner indicates that failure to set forth his grounds for relief in the petition may bar review of those grounds.  (Pet., ECF No. 1, PageID.3-4.) Nonetheless, Petitioner does not include these peripherally referenced ineffective assistance claims as grounds for relief in his habeas petition.  (*Id.*, PageID.4-6.)  He includes only the three issues addressed above.  (*Id.*)

Petitioner's objections offer a reply to Respondent's arguments on habeas issue I regarding Mr. Walters' testimony.  As noted above, Respondent argues that the issue was procedurally defaulted because there was no objection to the admission of the recording or Mr. Walters' testimony at trial.  Petitioner contends now that the procedural default was caused by ineffective assistance of counsel.  Respondent, anticipating that contention, had already argued that to use "ineffective assistance of counsel" as cause for a procedural default, it must have been exhausted as an independent constitutional argument in the state courts.  In his objections, Petitioner argues that he should not be required to exhaust his ineffective assistance of counsel issues in the state courts because his below-average intelligence operates as cause for his failure to raise an ineffective assistance of counsel which, in turn, would operate as cause to excuse the procedural default of habeas issue I.

To avoid the mire of evaluating "cause-for-failure-to-raise-an-argument-regarding-cause-for-failure-to-raise-an-argument," or evaluating three nested levels of prejudice, the undersigned has simply addressed the merits of habeas issue I.  A federal habeas court need not address a procedurally defaulted issue before deciding against a petitioner on the merits.  *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson*, 351 F.3d at 216) (citing *Lambrix*,

520 U.S. at 525).  Having eschewed the procedural default bar by addressing the merits, there is no longer any reason to address Petitioner's peripherally raised ineffective assistance of counsel claims.  Accordingly, because the ineffective assistance of counsel issues are not raised as grounds for habeas relief in the petition and because they are immaterial to any procedural default analysis, the Court will not address Petitioner's reference to specific instances of ineffective assistance of counsel beyond the issues raised in habeas ground III.

### Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

### **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated:  March 5, 2018                                    /s/ Ray Kent
                                                        United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCıvR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).